UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

v.

Travis Malik Galtney,

        Defendant.

Crim. No. 19-332 (MJD/BRT)

**REPORT AND RECOMMENDATION**

Chelsea A. Walcker, Esq., Benjamin Bejar, Esq., United States Attorney's Office, counsel for Plaintiff.

Jordan S. Kushner, Esq., CJA, counsel for Defendant.

BECKY R. THORSON, United States Magistrate Judge.

On December 18, 2019, Defendant Travis Malik Galtney was indicted on one-count of being a felon in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. No. 1, Indictment.) This case is before the Court on Defendant's Motion to Suppress Evidence. (Doc. No. 25.) The matter was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. This Court held a motion hearing on May 24, 2022, and received nineteen exhibits into evidence as well as testimony from Officer Jordan Trammel and Sergeant Lamichael Shead. (*See* Doc. Nos. 75, 76.) For the reasons stated below, this Court recommends that Defendant's motion be denied.

I.      FACTS

On May 28, 2019, St. Paul Officer Jordan Trammel was on patrol in his squad car when he observed a Yukon vehicle in front of him fail to stop at or before a stop sign. (Doc. No. 86, 5/24/22 Hrg. Transcript ("Tr.") at 22, 24.) The stop sign was located at the four-way intersection of Burr Street and Whitall Street in a residential neighborhood of St. Paul. (*Id.* at 22–24.) Officer Trammel testified that he was traveling south on Burr Street toward Whitall Street, about five to ten feet behind the Yukon, when he saw the Yukon momentarily stop past the intersection's stop sign before turning right onto Whitall. (*Id.* at 24.) Officer Trammel believed this constituted a violation of Minnesota traffic laws:

> [Government]: . . . And you said [the Yukon] did not stop before the stop sign. What did it do?
>
> [Officer Trammel]: Correct. Yeah, the vehicle went all the way -- basically all the way into the intersection past the marked stop sign there. It stopped and then turned west.
>
> [Government]: And is that an improper stop at a stop sign under Minnesota statutes?
>
> [Officer Trammel]: It is. All vehicles have to come to a complete stop at or behind the stop sign before proceeding into the intersection.
>
> . . . .
>
> [Government]: And a vehicle would have to stop before that stop sign in order for it to be a legal and lawful stop; is that correct?
>
> [Officer Trammel]: Yes.

(*Id.* at 24, 27.)

After observing what he believed to be a traffic violation, Officer Trammel turned on his squad car lights and pulled the Yukon over. (*Id.* at 29, 30.) He then approached the driver's side where Defendant was sitting next to another occupant on the passenger side. (*Id.* at 31–32; Gov't. Ex. 2 at 23:27:42–55.) Officer Trammel explained to Defendant that he had stopped him because he had failed to stop at or before the stop sign. (Gov't. Ex. 2 at 23:27:56–28:08.) Officer Trammel then smelled marijuana coming from inside the vehicle. (Tr. 29, 33; Gov't. Ex. 2 at 23:28:23–25.) He asked Defendant and the passenger when they had last smoked marijuana. (Tr. 33; Gov't. Ex. 2 at 23:28:18–25.) Defendant told Officer Trammel that he had not smoked yet but that he had a blunt in the car's cup holder, which he pointed to, and that he had marijuana in his pants pocket. (Tr. 33; Gov't. Ex. 2 at 23:28:25–40.) Officer Trammel then returned to his squad car and called for a backup squad to search the vehicle for more drugs. (Tr. 34.)

Shortly thereafter, additional officers arrived on the scene. (*Id.* at 34.) The officers asked Defendant and the passenger to exit the vehicle, which they did. (*Id.* at 35–36.) The officers then pat-frisked Defendant and the passenger for weapons and placed them in the rear of Officer Trammel's squad car so that the officers could safely search the vehicle. (*Id.* at 36–37.) Approximately two minutes into the search, Officer Trammel, as he was feeling the center console cup holder, noticed it was loose:

> I checked the cup holder area where Mr. Galtney had pointed to and said he had a marijuana blunt. I noticed it wasn't there. While I touched the cup holder, I noticed it was -- it was really loose. I think I just had a couple fingers on it and it popped open immediately. And after it was open, I looked in there and I could see the rear of a gun.

3

(Tr. 37; Gov't. Ex. 2 at 23:35:04–36:25.) The officers then discovered two handguns inside the cup holder cavity. (Tr. 49–41.) Defendant and the passenger were then arrested. (Tr. at 41–42.)

## II.   ANALYSIS

Defendant seeks to suppress evidence seized by the police during their warrantless search of his vehicle. (*See generally* Def.'s Post-Hearing Mem. in Supp. of Mot. to Suppress ("Def.'s Mem.").) He makes two arguments. First, he argues that because he did not violate any traffic law, Officer Trammel lacked probable cause to conduct a traffic stop. (*Id.* at 5–7.) Second, he argues that even if the traffic stop was proper, the police still lacked probable cause to search the closed compartments of his vehicle. (*Id.* at 7–10.) The Government opposes both arguments. (*See generally* Gov't.'s Oppo. to Def.'s Mot. to Suppress ("Gov't.'s Mem.").)

### A.   **Traffic Stop**

Defendant argues that no traffic law required him to stop at or before the stop sign and therefore Officer Trammel lacked probable cause to pull him over. The Government argues that so long as Officer Trammel had a reasonable basis to believe Defendant violated a traffic law, he had probable cause to pull Defendant over.

The Fourth Amendment of the United States Constitution safeguards "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const., amend. IV. A traffic stop constitutes a seizure under the Fourth Amendment, and generally, the police must have probable cause to believe a traffic violation has occurred for the seizure to be reasonable.

4

*Whren v. United States*, 517 U.S. 806, 809–10 (1996). Even a minor traffic violation provides sufficient probable cause to constitute a reasonable seizure. *United States v. Frasher*, 632 F.3d 450, 453 (8th Cir. 2011). An officer may be mistaken about whether a traffic violation occurred, as long as the officer's actions and mistake were objectively reasonable given the circumstances. *See United States v. Miller*, 915 F.3d 1207, 1209 (8th Cir. 2019) ("[A] traffic stop comports with the Constitution when the officer reasonably believes that the vehicle has committed a traffic infraction, even if the vehicle did not actually commit such an infraction."); *see also United States v. Martin*, 411 F.3d 998, 1001 (8th Cir. 2005) ("[A] misunderstanding of traffic laws, if reasonable, need not invalidate a stop made on that basis.").

The intersection of Whitall Street and Burr Street is in a residential neighborhood of St. Paul. Photos and footage show that each street has a posted stop sign before the streets intersect. (*See* Gov't. Exs. 13–15; Def.'s Exs. 15–17.) The stop signs are posted several feet before the curb ends and the streets actually intersect. (*See, e.g.*, Gov't.'s Ex. 15; Def.'s Ex. 15 at 4.) Dashcam video from Officer Trammel's squad car shows Defendant did not stop at or before the posted stop sign but instead came to a complete stop after the stop sign.[1] (Gov't. Ex. 12 at 18:27:15–20.) Officer Trammel testified that

---

[1] In his reply brief, Defendant argues that "it is not clear whether Mr. Galtney stopped at the stop sign or slightly after the stop sign." (Doc. No. 105, Def.'s Reply Mem. in Supp. of Mot. to Suppress ("Def.'s Reply") 10.) However, dashcam footage from Officer Trammel's squad car shows that Defendant did not come to a complete stop until after the stop sign. (Gov't. Ex. 12 at 18:27:15–20.) Even if the video were unclear, this Court finds Officer Trammel's testimony credible that he believed, based on the position of Defendant's car in the video, that Defendant had not come to a complete stop at or

this constituted an "improper stop" because, under Minnesota law, "[a]ll vehicles have to come to a complete stop at or behind the stop sign." (Tr. 24, 27.) The Government cites Minnesota Statute § 169.30(b) as the basis for Defendant's stop-sign violation:

> Every driver of a vehicle shall stop at a stop sign or at a clearly marked stop line before entering the intersection, except when directed to proceed by a police officer or traffic-control signal.

Minn. Stat. § 169.30(b) (2020).[2] Defendant argues § 169.30(b) is not applicable to the residential intersection of Burr Street and Whitall Street because § 169.30's title is "169.30 DESIGNATION OF THROUGH HIGHWAYS." According to Defendant, because the title of § 169.30 references "through highways," § 169.30(b) only applies "to stop signs at 'through highways.'" (Def.'s Mem. n. 1; Def.'s Reply 2–5.) This reading, Defendant argues, is further bolstered by the first part of the statute—§ 169.30(a)—which references "highways" in addressing the Commissioner of Transportation's authority to erect stop signs:

> (a) The commissioner, with reference to state trunk highways, and local authorities, with reference to other highways under their jurisdiction, may designate through highways by erecting stop signs or yield signs at entrances thereto or may designate any intersection as a stop or yield intersection by erecting like signs at one or more entrances to such intersection; provided, that local authorities, with the consent of the commissioner, may designate through highway or stop or yield intersections on state trunk highways.

---

before the stop sign. *See, e.g.*, *United States v. Gunnell*, 775 F.3d 1079, 1083 (8th Cir. 2015).

[2] In his memorandum, Defendant originally focused his arguments on Minn. Stat § 169.20, subd. 3b as the basis for his stop-sign violation. (Def.'s Mem. 6.) But because the Government argues that it is § 169.30(b) that is the basis for Defendant's stop-sign violation, this Court need not address § 169.20, subd. 3b or Defendant's arguments concerning that traffic law.

6

Because Defendant stopped at a "residential intersection," and not a 'through highway,'" Defendant argues that § 169.30(b) is not applicable, and thus Officer Trammel lacked probable cause to stop his vehicle. (Def.'s Mem. n. 1.)

The Government contends that Defendant's reading of § 169.30(b) is too narrow. To support its argument that § 169.30(b) applies to many kinds of roads, it cites Minnesota Supreme Court decision *State v. Gibson*, which states—without any reference to highways—that "Minn. Stat. § 169.30(b) is violated when the driver of a vehicle drives past the stop sign or stop line before coming to a complete stop." 945 N.W.2d 855, 859 (Minn. 2020). Defendant argues that *Gibson* is not persuasive here because *Gibson* did not address whether § 169.30(b) applies to streets other than highways. (Def.'s Reply 2.) This Court, however, need not decide which parties' interpretation of § 169.30(b) is the correct one. This is because even assuming Defendant's interpretation is correct, the determinative question is not whether Defendant actually committed a traffic violation but instead "whether an objectively reasonable police officer could have formed a reasonable suspicion that [Defendant] was committing a code violation." *Martin*, 411 F.3d at 1001.

Such a determinative question came before the Eighth Circuit in the comparable case *United State v. Miller*, 915 F.3d 1207, 1208 (8th Cir. 2019). There, the defendant moved to suppress evidence found in his vehicle based on a challenged interpretation of an Iowa traffic law. *Id.* An officer stopped the defendant's vehicle when he observed the defendant's vehicle approach an intersection without a marked stop line and stop beyond a stop sign. *Id.* After pulling the defendant over, the officer approached the truck,

7

whereupon he smelled marijuana and subsequently removed the defendant from the vehicle. *Id.* The defendant was then discovered to have a firearm in his possession, along with methamphetamine, and was charged with felon in possession of a firearm. *Id.* The defendant subsequently moved to suppress the evidence based on his challenge of the traffic stop. *Id.* at 1209. The traffic law in question stated that a driver approaching an intersection with a stop sign must stop at either a clearly marked stop line or before entering the crosswalk. *Id.* There was no stop line at the stop sign or a marked crosswalk; however, the district court found that an implied crosswalk stretched through the intersection, even though none was marked. *Id.*

On appeal to the Eighth Circuit, the defendant contended that, based on the definition of "crosswalk" and the intersection in question, no implied prolongation of the sidewalk existed. *Id.* But the Eighth Circuit concluded that, even assuming the defendant's interpretation was correct, a traffic stop still comported "with the Constitution when the officer reasonably believes that the vehicle has committed a traffic infraction, even if the vehicle did not actually commit such an infraction." *Id.* As the Eighth Circuit further stated:

> We do "not expect state [police officers] to interpret the traffic laws with the subtlety and expertise of a criminal defense attorney." *United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999). Moreover, "a misunderstanding of traffic laws, if reasonable, need not invalidate a stop made on that basis." *Martin*, 411 F.3d at 1002.

*Id.* The Eighth Circuit then concluded that because the officer reasonably believed that the defendant had violated a traffic code when the defendant's vehicle stopped beyond the stop sign, there was sufficient probable cause for the stop. *Id.*

8

Similarly, in *United States v. Martin*, the Eighth Circuit concluded that officers reasonably believed that a defendant had violated a traffic code when the traffic code in question could be reasonably interpreted in the officers' favor. 411 F.3d at 1000. There, officers pulled the defendant over for having one non-functioning stop light. *Id.* The defendant argued that he did not violate the applicable traffic code because the code only required that his vehicle be equipped with *a* stop light in good working order, not two stop lights. *Id.* at 1001. The Eighth Circuit concluded it would be objectively reasonable for an officer to believe the defendant had violated the applicable traffic code because other stop light laws in the region required all stop lights to be in good working order and the plain language of the traffic code included a plural reference to "stop lights." *Id.* at 1001–02.

Here, like in *Miller* and *Martin*, the question before this Court is whether an objectively reasonable officer would believe a state traffic code applies to Defendant's traffic stop. This Court finds that, even assuming Defendant's interpretation is correct that § 169.30(b) does not apply to residential intersections, an objectively reasonable officer would still have interpreted § 169.30(b) to apply to a residential intersection such as Whitall Street and Burr Street. This finding is based on the plain language of § 169.30(b), which could reasonably be interpreted to include other types of streets like the ones at issue here. *See Martin*, 411 F.3d at 1001 (concluding that an officer's misunderstanding of a traffic law regarding brake lights was objectively reasonable where the plain language of the traffic law could be read such that the defendant committed a traffic violation). Though § 169.30 is titled "Designation of through

9

highways," the text itself specific to subsection (b) does not mention highways but instead states more generally that "[e]very driver of a vehicle shall stop at a stop sign or at a clearly marked stop line before entering the intersection." Minn. Stat. § 169.30(b); *see also United States v. Gant*, No. 12-CR-61 (ADM/TNL), 2012 WL 2060637, at *3 (D. Minn. June 7, 2012) (citing Minn. Stat. § 169.30(b) and stating generally that "every driver in Minnesota must bring his vehicle to a complete stop at a stop sign"). Thus, one could reasonably read the plain language of § 169.30(b) as applying to the residential intersection where Defendant failed to stop at or before the stop sign. *See Martin*, 411 F.3d at 1001.

Additionally, it is objectively reasonable to interpret the word "highway" in the heading of § 169.30 as applying to Whitall Street and Burr Street because, under Minnesota traffic laws, the word "highway" shares the same definition as "street," both of which are jointly defined as follows:

> the entire width between boundary lines of any way or place when any part thereof is open to the use of the public, as a matter of right, for the purposes of vehicular traffic.

Minn. Stat. § 169.01, subd. 29; *see also Martin*, 411 F.3d at 1001 (examining state traffic laws to determine whether an officer's mistaken belief was reasonable). Indeed, the word "highway" appears to be used interchangeably with the word "street" throughout Minnesota law.[3] For example, "Traffic" under Minnesota law is defined as "pedestrians, ridden or herded animals, vehicles, streetcars, and other conveyances, either singly or

---

[3]   Similarly, federal law also defines the term "highway" more generally as including, in part, "a road, street, and parkway." 23 U.S.C. § 101.

10

together, while using any *highway* for purposes of travel." Minn. Stat. Ann. § 169.011, subd. 84 (emphasis added). And "Vehicle" is defined as "every device in, upon, or by which any person or property is or may be transported or drawn upon a *highway*, excepting devices used exclusively upon stationary rails or track." Minn. Stat. Ann. § 169.011, subd. 92 (emphasis added).

The Minnesota Court of Appeals has also concluded that the word "highway" in Minnesota law applies more broadly to other types of roadways, such as streets. In the Minnesota Court of Appeals decision *State v. Jones*, a defendant argued that the police did not have a lawful basis to stop his vehicle when he failed to signal a lane change on a *city street* because Minn. Stat. § 169.19, subd. 4 only applied to *highways*. 649 N.W.2d 481, 483 (Minn. Ct. App. 2002). The Minnesota Court of Appeals recognized that the statute only mentioned the word "highway." *Id.* However, it reasoned that the definition of "highway" was broader than the defendant's definition. *Id.* at 484. Moreover, the Minnesota Court of Appeals concluded that the defendant's interpretation of "requiring a motorist to signal a turn or a lane change only on highways and not busy city streets would be an absurd result" that would "endanger vehicles and pedestrians on streets, contrary to the purpose of the traffic regulations." *Id.* Thus, one could reasonably read the word "highway" in the title of § 169.30 and conclude that, based on Minnesota law, it applied to many types of street intersections, such as the four-way intersection of Burr Street and Whitall Street.

Therefore, based on the language of the statute and the surrounding Minnesota law and caselaw, this Court finds that it would be objectively reasonably to believe that §

11

169.30(b) applied to the intersection where Defendant failed to stop at or before the stop sign. And because Officer Trammel's belief that Defendant violated Minnesota traffic laws by failing to stop before or at the stop sign was objectively reasonable, Officer Trammel had probable cause for the traffic stop.

**B.    Search**

Defendant argues that the small amount of marijuana and the smell of marijuana did not justify a full search of his vehicle, including enclosed compartments. In response, the Government cites numerous Eighth Circuit cases that hold that even just the smell of marijuana coming from a vehicle affords the investigating officer probable cause to search the entire vehicle for drugs.

The Eighth Circuit has consistently held that the smell of marijuana coming from a vehicle supports probable cause to search for drugs. *See United States v. Walker*, 840 F.3d 477, 483–84 (8th Cir. 2016) (concluding that a smell of marijuana after the defendant opened window provided probable cause to search car); *United States v. Smith*, 789 F.3d 923, 929 (8th Cir. 2015) (concluding that the "slight odor of marijuana" was "sufficient to establish probable cause to search an automobile and its contents"); *United States v. Winters*, 221 F.3d 1039, 1042 (8th Cir. 2000) (concluding that the smell of raw marijuana created "probable cause to search the car and its contents for drugs"); *United States v. Peltier*, 217 F.3d 608, 610 (8th Cir. 2000) (concluding that the odor of burnt marijuana "gave the deputy probable cause to search [the] truck for drugs"); *United States v. McCoy*, 200 F.3d 582, 584 (8th Cir. 2000) (concluding that the odor of burnt marijuana on the suspect and the smell of air freshener in the car gave officer probable

12

cause to search the vehicle); *United States v. Neumann*, 183 F.3d 753, 757 (8th Cir. 1999) (concluding that an officer's detection of smell of burnt marijuana provided probable cause to search entire vehicle); *United States v. Caves*, 890 F.2d 87, 90–91 (8th Cir. 1989) (concluding that the smell of burnt marijuana supported probable cause for a vehicle search). The law is thus clear that, where police smell marijuana emanating from a vehicle after a traffic stop, police have probable cause to search the vehicle. Here, Officer Trammel not only smelled marijuana emanating from Defendant's car, but Defendant also admitted to having marijuana in his possession and in the vehicle's cupholder. This constituted probable cause to search the vehicle. *See United States v. Smith*, 990 F.3d 607, 612 (8th Cir. 2021) ("And based on the smell of marijuana emanating from the car and the marijuana cigarette found in the passenger's jacket, the officers also had probable cause to search the entire vehicle for drugs and drug paraphernalia.").

     Defendant also argues that even if probable cause existed to search his vehicle, there was no justification to search the enclosed areas of his vehicle without first obtaining a warrant. (Def.'s Mem. 9.) The scope of a warrantless search, however, is not limited to just open areas of a vehicle – it includes any area of the vehicle in which evidence of the crime could be found. As the United States Supreme Court has stated, the "scope of a warrantless search of an automobile . . . is not defined by the nature of the container in which the contraband is secreted . . . it is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *United States v. Ross*, 456 U.S. 798, 823–24 (1982); *see also United States v. Stringer*, 739 F.3d

391, 395 (8th Cir. 2014) (concluding that probable cause to search permits officers "to search the vehicle and any closed containers therein") (emphasis added); *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.") (emphasis added).

Three cases from the Eighth Circuit are particularly instructive here regarding the scope of an officer's search for marijuana inside a vehicle: *United States v. Brown*, *United States v. Neumann*, and *United States v. Jennings*. In *United States v. Brown*, upon approaching a parked car, two deputies "each smelled the distinct odor of burnt marijuana emanating from [a] vehicle" holding three occupants. 634 F.3d 435, 439 (8th Cir. 2011). The passenger in the back seat "sat up and admitted [to] smoking marijuana." *Id.* at 436. After receiving consent from the driver, the deputies searched the trunk of the vehicle for the backseat passenger's bag. *Id.* The deputies found no marijuana in the bag, but the odor of marijuana still emanated from the vehicle. *Id.* Given the odor, the deputies searched the entire vehicle, finding a loaded handgun underneath a bag on the floor in the front passenger seat. *Id.* at 436–37. The Eighth Circuit held that, given that there was a "reasonable probability marijuana was located inside the vehicle . . . the officers had probable cause to search the *entire vehicle* for illegal drugs." *Id.* at 438 (emphasis added).

Similarly, in *United States v. Neumann*, during a traffic stop, a trooper detected the smell of burnt marijuana coming from the cab of the defendant's pickup truck. 183 F.3d at 755. The trooper asked the defendant if he had been smoking marijuana, and the defendant stated he had smoked marijuana in the vehicle and that a small bag of

14

marijuana could be found on the passenger side of the cab of the truck. *Id.* The trooper then searched the "entire vehicle" and recovered approximately one hundred pounds of marijuana from the rear of the pickup truck. *Id.* In upholding the search of the entire vehicle, the Eighth Circuit stated the following:

> [the officer's] detection of the smell of burnt marijuana while he was conducting the search for an open container gave him probable cause to search the entire vehicle for drugs . . . Accordingly, the district court did not err in denying the motion to suppress.

*Id.* at 756.

Finally, in *United States v. Jennings*, a police officer, after a traffic stop, noticed the smell of burnt marijuana coming from the defendant's clothing and the interior of his SUV. No. 06-4109, 2007 WL 2142260, at *1 (8th Cir. July 27, 2007). Based on this, the officer searched the vehicle for evidence of criminal activity, including drugs. *Id.* An officer involved in the search opened a compartment in the rear cargo area of the SUV, which was behind the seats of the vehicle. *Id.* In this cargo area, the officer found cocaine and a firearm. *Id.* The Eighth Circuit held that the officer could search the entire vehicle, including the compartment in the rear cargo area, even though the marijuana was likely to be smoked only in the passenger area. *Id.* at *2.

Like in *Brown*, *Neumann*, and *Jennings*, here, the officers had probable cause to search the entire vehicle when they not only detected the smell of marijuana emanating from inside the car, but Defendant also admitted to having marijuana in his possession. Because the officers had probable cause to search the vehicle, they were authorized to search "any area of the vehicle in which the evidence might be found." *Arizona v. Gant*,

15

556 U.S. 332, 347 (2009) (emphasis added); *see also United States v. George*, No. 4:08-CR-596 CEJ, 2010 WL 431783, at *11 (E.D. Mo. Feb. 2, 2010) ("[C]ontrary to what the Defendant states, the smell of marijuana gave the officers probable cause to search any location in the vehicle where marijuana may be found which included a wooden box capable of concealing several thousand pills."). This included opening the cupholder compartment where Officer Trammel found the two guns. *See Jennings*, 2007 WL 2142260, at *2 (holding that police could open a compartment in the rear cargo area of the vehicle as part of their search for drugs). Therefore, this Court finds that the police had probable cause to search the enclosed areas of Defendant's vehicle, including the cupholder compartment.

## RECOMMENDATION

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence (Doc. No. 25) be **DENIED**.

Date:  August 29, 2022

                                                  *s/ Becky R. Thorson*
                                                  BECKY R. THORSON
                                                  United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b), any party may file and serve specific written objections to this Report and Recommendation by **September 12, 2022**. A party may respond to those objections by **September 26, 2022**. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 7 days from the date of its filing. If timely objections are filed, this Report will be considered under advisement from the earlier of: (1) 7 days after the objections are filed; or (2) from the date a timely response is filed.