UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

                    Plaintiff,      **MEMORANDUM OPINION
                                    AND ORDER**
                                    Criminal No. 19-332 (MJD/JFD)

v.

Travis Malik Galtney,

                    Defendant.

_____

Benjamin Bejar, Chelsea A. Walcker, Assistant United States Attorneys,
counsel for Plaintiff.

Jordan S. Kushner, CJA, counsel for Defendant.
_____

## I.   INTRODUCTION

This matter is before the Court on the Report and Recommendation by

United States Magistrate Judge Becky R. Thorson dated August 29, 2022.  (Doc.

112.)  In the Report and Recommendation, Magistrate Judge Thorson

recommended that Defendant's first Motion to Suppress (Doc. 25) be denied.

Defendant objected to the Report and Recommendation.  (Doc. Nos. 120,

122.)  The Government did not object to the Report and Recommendation but did

respond to Defendant's Objection.  (Doc. 121.)

1

The Court has conducted a <u>de novo</u> review of the Report and Recommendation and the record before the Magistrate Judge as it relates to Defendant's Motion to Suppress.  28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b)(3); <u>Grinder v. Gammon</u>, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam).  Based upon that review, and in consideration of the applicable law, the Court will adopt the Report and Recommendation and overrule Defendant's Objection.

## II.   BACKGROUND

On December 18, 2019, a grand jury indicted Defendant on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  (Doc. 1.)  On May 17, 2022, Defendant was indicted via a Superseding Indictment on an additional count of being a felon in possession of a firearm, in violation of the same statutes.  (Doc. 69.)

Defendant filed his first Motion to Suppress on January 16, 2020.  (Doc. 25.)  In that Motion, Defendant sought to suppress evidence from a May 28, 2019 traffic stop and related search of Defendant's vehicle.  (<u>Id.</u>; <u>see also</u> Doc. Nos. 91, 105.)

Because Defendant escaped from custody for approximately two years, a hearing on the Motion to Suppress was delayed until May 24, 2022.  (Doc. 75.)  At

that hearing, the Magistrate Judge received nineteen exhibits into evidence as well as testimony from Officer Jordan Trammel and Sergeant Lamichael Shead. (Doc. Nos. 75, 76.)

## III.   DISCUSSION

In his Objection, Defendant seeks to suppress evidence seized by the police during their warrantless search of his vehicle, namely two firearms and ammunition.  (Doc. 120.)  Defendant argues the Magistrate Judge erred in recommending that his Motion to Suppress be denied.  This Court, however, finds no error in the Magistrate Judge's Report and Recommendation.  The police had the requisite cause to stop Defendant's vehicle on May 28, 2019.  The police also had the requisite cause to conduct a warrantless search of the closed compartment in Defendant's vehicle where the firearms and ammunition were found.

### A.   Traffic Stop

Defendant objects to the Magistrate Judge's conclusion that the police had probable cause to stop Defendant's vehicle for failing to properly stop at a stop sign.  (Doc. 120 at 5.)  Defendant contends dashboard camera footage of the stop in question shows that he stopped before entering the intersection in question.

(Id. at 13.)  The relevant question, however, is not whether Defendant stopped, but rather, where Defendant stopped in relation to the stop sign.  Based on the dashcam footage, the Court agrees with the Magistrate Judge that dashcam video shows Defendant did not stop at or before the stop sign but instead came to a stop well past the stop sign.  (Doc. 112 at 5; Gov't Ex. 12 at 18:27:20; Exs. 14–15.)

Even if Defendant accepted that he stopped past the stop sign, however, Defendant still contends that he did not violate any traffic laws by doing so.  The officer who conducted the traffic stop, Officer Trammel, testified before the Magistrate Judge that he disagreed and believed that Defendant's failure to stop before the stop sign violated Minnesota traffic laws.  (Doc. 86, 5/24/22 Hrg. Transcript ("Tr.") at 24, 27.)

Under Eighth Circuit precedent, a traffic stop complies with the Fourth Amendment so long as the officer's actions were objectively reasonable given the circumstances.  See, e.g., United States v. Miller, 915 F.3d 1207, 1209 (8th Cir. 2019); United States v. Martin, 411 F.3d 998, 1001 (8th Cir. 2005).  The Government argued that Officer Trammel's decision to stop Defendant for stopping after the stop sign was objectively reasonable in light of Minn. Stat. §

169.30(b).  This statute requires drivers to stop "<u>at</u> a stop sign or <u>at</u> a clearly marked stop line before entering the intersection."  <u>Id.</u> (emphasis added).

Defendant argues, however, that § 169.30(b) does not apply to the intersection in question.  (Doc. 120 at 6.)  Defendant argues § 169.30(b) applies to "through highways" and not residential intersections like the one in question. The Magistrate Judge concluded that, even if § 169.30(b) could be interpreted as not applying to the intersection in question, Office Trammel still had probable cause to stop Defendant's vehicle because an objectively reasonable officer could have interpreted § 169.30(b) to apply to a residential intersection such as the one in question.  (Doc. 112 at 9.)

In his Objection, Defendant again argues that § 169.30(b) does not apply to the intersection in question and that the Government's reliance on this statute cannot show that Officer Trammel's actions were objectively reasonable.  This Court disagrees.  Defendant argues  169.30(b) only applies to "through highways," based on its language and title.  <u>See</u> Minn. Stat. § 169.30 (entitled "Designation of Through Highways").  Defendant instead argues that Minn. Stat. § 169.20 subd. 3(b) applies to the intersection in question because that provision addresses stop signs that are "not a part of a through highway."  Section 169.20

subd. 3(b) further states that drivers shall "stop in obedience to a stop sign;" whereas, § 169.30(b) states that drivers shall stop "at" a stop sign.  Defendant takes this to mean drivers need not stop at or before stop signs in residential intersections as long as they stop before entering the intersection.

As the Magistrate Judge determined, however, this Court need not reach the questions of which statute applies to stop signs at residential intersections or where exactly Minnesota drivers must stop at such intersections before violating the law.  This is because the applicable precedent only requires that "an objectively reasonable police officer could have formed a reasonable suspicion that [the defendant] was committing a code violation."  Martin, 411 F.3d at 1001; see also Miller, 915 F.3d at 1209 ("a traffic stop comports with the Constitution when the officer reasonably believes that the vehicle has committed a traffic infraction, even if the vehicle did not actually commit such an infraction").  Based on the video and the other evidence available here, it was objectively reasonable for Officer Trammel to believe Defendant had violated the law by stopping in the manner that he did.

Even if it were necessary to determine which traffic law applies to the intersection in question, Officer Trammel's belief would still be objectively

6

reasonable under either of the statutes provided by the parties. If § 169.30(b) applies, as the Government contends, then it was objectively reasonable for Officer Trammel to believe Defendant committed a traffic violation by failing to stop "at" the stop sign. Indeed, the Minnesota Supreme Court stated as much in a recent decision. See State v. Gibson, 945 N.W.2d 855, 859 (Minn. 2020) ("We hold that Minn. Stat. § 169.30(b) is violated when the driver of a vehicle drives past the stop sign or stop line before coming to a complete stop.").

If Minn. Stat. § 169.20 subd. 3(b) applies, as Defendant contends, then it was objectively reasonable for Officer Trammel to believe Defendant failed to stop "in obedience to a stop sign" by driving past the stop sign before stopping. Thus, the stop complied with the Fourth Amendment no matter which of these two statutes applies. Miller, 915 F.3d at 1209; Martin, 411 F.3d at 1001; see also United States v. Smart, 393 F.3d 767, 771 (8th Cir. 2005) (possibility that defendant had not violated traffic law, and subsequent determination that he had not, did not mean that officer's initial suspicion of violation was unreasonable).

**B.  Search of Closed Compartment in Defendant's Vehicle**

Next, Defendant also objects to the Magistrate Judge's conclusion that the search of Defendant's vehicle complied with the Fourth Amendment.    Under the "automobile exception" to the Fourth Amendment, police may search a vehicle without first obtaining a warrant "'[w]hen probable cause exists to believe that contraband is located inside the vehicle.'"  United States v. Smith, 990 F.3d 607, 612 (8th Cir. 2021), reh'g denied (Apr. 27, 2021) (quoting United States v. Oliver, 950 F.3d 556, 563 (8th Cir. 2020)).  But there are limitations on the scope of a warrantless search conducted pursuant to the automobile exception. The search is limited to the places in the vehicle "that may conceal the object of the search."  United States v. Wells, 347 F.3d 280, 287 (8th Cir. 2003).  As the Supreme Court has explained,

> The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted.  Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found.  Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase.  Probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab.

United States v. Ross, 456 U.S. 798, 824 (1982).

The Magistrate Judge correctly determined that the police did not exceed these limitations in conducting their warrantless search of Defendant's vehicle. (Doc. 112 at 16.)  Importantly, Defendant admitted to Officer Trammel that he possessed marijuana, thereby supplying the requisite cause to search Defendant's vehicle without a warrant.  (Tr. 33; Gov't Ex. 2 at 23:28:15–40.) Further, the allowable scope of that search was defined when Defendant told Officer Trammel that he had marijuana in his pants pocket and in the car's cupholder, thereby supplying the requisite cause to search in and around those areas.  (Id.)  Based on the body-worn camera footage and testimony available to the Court, the officers did not find marijuana in the cupholders at first, which justified them in searching the area around the cupholders.  (Tr. 37; Gov't Ex. 2 at 23:35:04–36:37.)  During this search, Officer Trammel determined that the cupholders could be easily removed, revealing the evidence Defendant now seeks to suppress: two handguns and ammunition.  (Id.)  Given the specifics of Defendant's admissions, the officers' discovery of this evidence complied with the Fourth Amendment.

## ORDER

The Court finds no error in the Magistrate Judge's application of the law to the facts as it relates to Defendant's first Motion to Suppress.  Accordingly, based on the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. The Report and Recommendation dated August 29, 2022 (Doc. 112) is **ADOPTED**; and

2. Defendant's Motion to Suppress (Doc. 25) is **DENIED**.


Dated:   October 31, 2022                              s/Michael J. Davis
                                                       Michael J. Davis
                                                       United States District Court