UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

              Plaintiff,      **MEMORANDUM OF LAW & ORDER**
                                      Criminal No. 19-cr-332 (MJD/JFD)

v.

Travis Malik Galtney,

              Defendant.

---

Chelsea A. Walcker, Benjamin Bejar, Assistant United States Attorneys, counsel for Plaintiff.

Jordan S. Kushner, CJA, counsel for Defendant.

---

## I.    Introduction & Background

This matter is before the Court on the October 21, 2022 Report and Recommendation of United States Magistrate Judge Becky R. Thorson. (Doc. 123.) In the Report and Recommendation, the Magistrate Judge recommends the denial of Defendant Travis Malik Galtney's Motions to Suppress. (Doc. Nos. 83, 84.) Defendant filed objections to the Report and Recommendation. (Doc. Nos. 128, 130.) The Government filed a response to Defendant's objections. (Doc. 129.)

1

Pursuant to statute, the Court has conducted a de novo review of the record. 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b). Based upon that review, and in consideration of the applicable law, the Court will adopt the Report and Recommendation and overrule Defendant's objections.

For a full recitation of the facts, the Court refers to the Report and Recommendation. (Doc. 123.) Briefly, Defendant's first motion to suppress that is at issue is premised on the argument that law enforcement lacked a sufficient basis to conduct a traffic stop of Defendant's vehicle on January 8, 2020. (Doc. 83.) After stopping Defendant's vehicle, members of a U.S. Marshal Service Fugitive Task Force arrested Defendant on an outstanding arrest warrant. (Doc. 100, Gov't Ex. List, Exs. 1–2; Doc. 107, Hrg. Transcript ("Tr.") at 10–13.) A firearm was later found inside the car after a search was conducted pursuant to a search warrant.

On May 17, 2022, Defendant was indicted via a Superseding Indictment on an additional count of being a felon in possession of a firearm based on the firearm that was found in Defendant's vehicle after his January 8, 2020 arrest. (Doc. 69.)

2

Defendant's second motion to suppress that is at issue is premised on the argument that Defendant did not properly waive his rights under Miranda v. Arizona, 384 U.S. 436 (1966). (Doc. 84.) On the same day as his arrest, Defendant was interviewed by law enforcement officers in the U.S. Marshal cellblock at the St. Paul Courthouse. (Doc. 107, Tr. at 43–45.) The interview was recorded. (Doc. 100, Gov't Ex. List, Exs. 4A, 4B.) During the interview, officers advised Defendant of his Miranda rights using a standard Miranda form. (Id., Ex. 3, Ex. 4A at 2:38–3:35.) Defendant can be heard on the recording acknowledging his understanding of what the officers read to him, but the officers did not pass the form to Defendant to sign himself. (Id.; see also Doc. 107, Tr. at 48–50.) Instead, Officer Tim Moore noted Defendant's oral acknowledgment on the form in the spaces where an interviewee would typically initial and sign. (Id.; Doc. 100, Ex. 3.) Defendant made certain admissions potentially relevant to the firearms charges against him during the interview that he now seeks to suppress. (Id. at 52–55; Doc. 84.)

    **II.**    **Defendant's Objections to the Report and Recommendation**

        **A.**    **Defendant's Motion to Suppress Evidence from Stop, Search and Seizure of Defendant and Vehicles (Doc. 83)**

3

As noted in the Report and Recommendation, when "police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a Terry stop may be made to investigate that suspicion." United States v. Rush, 651 F.3d 871, 876 (8th Cir. 2011) (quoting United States v. Hensley, 469 U.S. 221, 229 (1985)); see also Terry v. Ohio, 392 U.S. 1, 25–31 (1968)). "A reasonable suspicion is a particularized and objective basis for suspecting the person who is stopped." United States v. Bustos-Torres, 396 F.3d 935, 942 (8th Cir. 2005) (quotations omitted). "In developing this suspicion, officers may rely on information provided by other officers as well as any information known to the team of officers conducting the investigation." United States v. Johnson, 31 F.4th 618, 622 (8th Cir. 2022) (quotations omitted).  The level of reasonable suspicion necessary to "justify a stop . . . need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." United States v. Arvizu, 534 U.S. 266, 274 (2002). Moreover, "the government at a suppression hearing need only demonstrate that a reasonable suspicion existed by a preponderance of the evidence." United States v. Atlas, 94 F.3d 447, 451 (8th Cir. 1996).  When deciding whether

reasonable suspicion sufficient to justify a Terry stop exists, the court looks at the totality of the circumstances. See United States v. Gilliam, 520 F.3d 844, 846 (8th Cir. 2008).

Defendant objects to the Magistrate Judge's conclusion that the Government proved that the task force officers who stopped Defendant on January 8, 2020 had the requisite "reasonable suspicion" to do so. This Court disagrees.

Based on this Court's review of the record before the Magistrate Judge, she heard sufficient testimony and received evidence to prove that the task force officers had a sufficient basis to stop Defendant on January 8, 2020. Sergeant Hughes' testimony established, among other things, that prior to stopping Defendant's vehicle, the task force had an active arrest warrant for Defendant, a photo of Defendant, a description of Defendant's vehicle, and Defendant's license plate number. (Doc. 107, Tr. at 10, 12–13, 20.) Further, after the officers received a report identifying Defendant, officers confirmed this identification by surveilling Defendant in the Walmart parking lot where they arrested him. (Id. at 13–16.) Hughes also testified that Defendant parked his vehicle in a fire lane at the Walmart, which was not a valid place to park, supplying a further basis to

stop Defendant.  (Id. at 15.)  The totality of these circumstances proves the Government had a sufficiently reasonable suspicion to stop Defendant by a preponderance of the evidence.  Gilliam, 520 F.3d at 846; Atlas, 94 F.3d at 451.

Defendant points to minor discrepancies in Sergeant Hughes' testimony to attempt to show that he and the task force did not make a reliable identification of Defendant before stopping him.  These discrepancies include a mistake regarding Defendant's height and Hughes' inability to recount specifically how the task force officer who initially identified Defendant did so.  But the R&R correctly determined that these minor discrepancies do not render the rest of the evidence presented at the suppression hearing unreliable.  See United States v. Mendoza, 677 F.3d 822, 828 (8th Cir. 2012) (affirming district court's probable cause determination despite the fact that officer's testimony differed slightly from contemporaneous police report).

Defendant also objects that the Report and Recommendation relied too heavily on the collective knowledge of the task force to find an adequate basis for the traffic stop.  "When multiple officers are involved in an investigation, probable cause may be based on their collective knowledge and need not be based solely on the information within the knowledge of the arresting officer as

long as there is some degree of communication." United States v. Frasher, 632 F.3d 450, 453 (8th Cir. 2011) (citing United States v. Morales, 238 F.3d 952, 954 (8th Cir. 2001)). Contrary to Defendant's objection, the Magistrate Judge's reliance on the collective knowledge of the task force was proper because Hughes' testimony established that the task force members were in constant communication with each other as they identified Defendant. (Doc. 107, at 12–13.) Accordingly, the requirement that the Government show "some degree of communication" between officers in order to rely on their collective knowledge was readily satisfied in this case. Frasher, 632 F.3d at 453.

Defendant also objects that the Report and Recommendation did not address whether officers had probable cause to arrest Defendant and seize his vehicle. This argument fails because the Report and Recommendation correctly determined that the task force had a sufficient basis to stop Defendant's vehicle for the reasons described above. Further, once the task force stopped Defendant and confirmed that he was the subject of an active arrest warrant, they had probable cause to arrest Defendant based on this warrant. As the Government noted in its response to Defendant's objections, Defendant has not challenged the validity of the arrest warrant or the subsequently-issued search warrant for

Defendant's vehicle. (Doc. 129 at 4 n.1.) The task force officers had a sufficiently reasonable suspicion to stop Defendant on January 8, 2020 and probable cause to arrest Defendant after stopping him.

### B.    Defendant's Motion to Suppress Statement (Doc. 84)

The Magistrate Judge also correctly determined that Defendant made a voluntary and knowing waiver of his Miranda rights during his post-arrest interview on January 8, 2020. A valid Miranda waiver must be (1) voluntary, "in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception" and (2) the defendant must have waived his rights "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." United States v. Vinton, 631 F.3d 476, 483 (8th Cir. 2011) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). The Government has the burden of proving that Defendant made a valid waiver of his Miranda rights by a preponderance of the evidence at a suppression hearing. See Colorado v. Connelly, 479 U.S. 157, 169 (1986); see also United States v. Figueroa-Serrano, 971 F.3d 806, 814 (8th Cir. 2020).

Defendant objects to the Magistrate Judge's conclusion that the Government produced sufficient evidence to show that Defendant understood

8

his <u>Miranda</u> rights and the consequences of waiving them during his January 8, 2020 interview with law enforcement.  <u>Vinton</u>, 631 F.3d 476, 483; <u>see also</u> <u>Berghuis v. Thompkins</u>, 560 U.S. 370, 384 (2010) (noting that a valid <u>Miranda</u> waiver must be "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it").  In support of his argument, Defendant points to the facts that he did not sign a <u>Miranda</u> waiver form himself at the interview and the officers who interviewed him never explicitly asked Defendant if he was agreeing to waive his <u>Miranda</u> rights.

Eighth Circuit precedent, however, holds that a defendant may implicitly waive his <u>Miranda</u> rights by continuing to respond to officers' questions after being advised of his rights.  While requiring the subject of a post-arrest interview to read and sign a <u>Miranda</u> form is certainly preferable, "[t]he Constitution . . . does not require that officers use a waiver form" or even that they "obtain an affirmative answer to a question such as, 'Do you waive these rights?'"  <u>United States v. Pearson</u>, No. 15-CR-117 (JRT/TNL), 2015 WL 6445439, at *13 (D. Minn. Oct. 23, 2015) (citations omitted).  Instead, a valid <u>Miranda</u> waiver may be "inferred from the fact that the defendant responded to questions posed by the interviewer after being advised of his rights."  <u>United States v. House</u>, 939 F.2d

659, 663 (8th Cir. 1991); see also Berghuis, 560 U.S. at 388–89 ("a suspect who has received and understood the Miranda warnings, and has not invoked his Miranda rights, waives the right to remain silent by making an uncoerced statement to the police."); see also Doc. 123 at 13–14 (collecting other applicable authorities).

The Magistrate Judge correctly applied these precedents to find that Defendant made a knowing and intelligent waiver of his Miranda rights at the January 8, 2020 interview by continuing to respond to the officers' questions after being advised of his rights.  This Court has reviewed the audio recording of the interview and, despite Defendant's assertions to the contrary, Defendant can be heard responding in the affirmative when Officer Moore asked him if he understood his rights.  (Doc. 100, Gov't Ex. List, Ex. 4A at 2:38–3:35.)   After listening to Moore read him his rights, Defendant then proceeded to respond to the officers' questions throughout the interview.  (Id., Ex. 4A.)  The recording of the interview also demonstrates that the officers conducted themselves in a professional manner and did not coerce Defendant.  (Id.)  The Court, therefore, finds no error in the Magistrate Judge's finding that Defendant made a voluntary and knowing waiver of his Miranda rights during the January 8, 2020 interview.

**ORDER**

The Court finds no error in the Magistrate Judge's application of the law to the facts as it relates to Defendant's Motions to Suppress (Doc. Nos. 83, 84). Accordingly, based on the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. The Report and Recommendation dated October 21, 2022 (Doc. 123) is **ADOPTED**;

2. Defendant's Motion to Suppress Evidence from Stop, Search and Seizure of Defendant and Vehicles (Doc. 83) is **DENIED**; and

3. Defendant's Motion to Suppress Statement (Doc. 84) is **DENIED**.

Dated:  January 10, 2023                     *s/ Michael J. Davis*
                                             Michael J. Davis
                                             United States District Court